IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 25–cv–00490–MDB

STEPHANIE YBARRA,

      Plaintiff,

v.

THE BOARD OF COUNTY COMMISSIONERS, CUSTER COUNTY,
TOM FLOWER, and
KELLY CAMPER,

      Defendants.

---

## ORDER

---

This matter comes before the Court on Defendants' "Motion to Dismiss Second Amended Complaint [ECF 26]." (["Motion"], Doc. No. 30.) Plaintiff filed a response and Defendants replied. (["Response"], Doc. No. 46; ["Reply"], Doc. No. 49). For the following reasons, the Motion is **GRANTED in part and DENIED in part.**

## BACKGROUND

Plaintiff brings both state and federal employment claims against the Custer County Board of Commissioners ("Board") and two individuals for alleged acts that occurred during her employment with Custer County ("County"). (Doc. No. 26 at 26-39, ¶¶ 149-247.) Plaintiff worked as a custodian for the County from December 2018 until September 2023, when she resigned. (*Id.*

at 4, ¶ 8.) During her employment, she apparently reported to Commissioner Kevin Day.[1] (*Id.* at 9, ¶ 46.) Defendant Kelley Camper serves as the County Clerk and Recorder, a position she held during Plaintiff's period of employment. (*Id.* at 4, ¶ 6) Defendant Tom Flower served as a Custer County Commissioner during that period until his recall in August 2023. (*Id.* at 4, ¶ 2.)

Plaintiff alleges that, in December 2021, Defendant Flower "began consistently employing intimidating tactics" toward Plaintiff after her significant other publicly called for Defendant Flower's resignation over alleged mistreatment of another female County employee.[2] (*Id.* at 6, 9, ¶¶ 19, 43.) Plaintiff says she became active in the effort to recall Defendant Flower in 2022, which in turn escalated the alleged harassment.[3] (*See id.* at 9-10, ¶¶ 48, 51-52.) Plaintiff also alleges that Defendant Camper joined in Defendant Flower's "campaign of harassment and retaliation" against Plaintiff. (*Id.* at 10, ¶ 49.)

In February 2023, Plaintiff submitted a formal complaint about Defendant Flower to the County. (*Id.* at 12, ¶ 61.) However, Plaintiff alleges the County failed to act on the complaint and as a result, her work environment "became increasingly hostile." (*Id.* at 13-14, ¶¶ 68-73).[4]

In October 2022, Defendant Camper deemed the petition to recall Defendant Flower insufficient, which in turn triggered a lawsuit to overturn that decision. (*Id.* at 14 n.1; *see id.* at 12, ¶¶ 59-60.) In a subsequent ruling, the Custer County District Court overturned Defendant Camper's determination and ordered that the recall process proceed. (*Id.* at 14 n.1, ¶ 74.) Plaintiff

---

[1] The Complaint states that Day was Plaintiff's "point of contact" starting in February 2022. (Doc. No. 26 at 9, ¶ 46.)

[2] Those tactics allegedly included "hostile gestures, sustained glaring, and other non-verbal harassment" toward Plaintiff. (*Id.* at 9, ¶ 43.)

[3] Plaintiff alleges that Camper leaked a list of the recall petition's signatories to Flower, which allowed Flower to identify and target Plaintiff. (*Id.* at 11-12, ¶¶ 57-58.)

[4] Plaintiff alleges that several other female employees filed complaints about Flower and that the County also failed to act on those complaints. (*Id.* at 6, ¶¶ 18, 23.)

alleges that, soon after that ruling, Defendant Flower began openly making derogatory comments to Plaintiff, muttering comments under his breath, and "giv[ing] her dirty looks." (*Id.* at 14, ¶ 76 (alleging Flower called her a "F_cking Bitch" and "Stupid Bitch").) Ultimately, the recall effort was successful, and Defendant Flower was removed from office in August 2023. (*Id.* at 15, ¶ 82.)

Despite Defendant Flower's recall, Plaintiff alleges that Defendant Camper continued to encourage other employees to ignore her. (*Id.* at 15-16, ¶¶ 84-87, 89.) Plaintiff says Defendant Camper made "false and misleading" representations to the Board and the County's human resources department that other employees and the public were complaining about the quality of Plaintiff's work. (*Id.* at 16-17, ¶¶ 92-93.) Plaintiff alleges that as a result of Defendant Camper's campaign, Plaintiff was eventually barred from cleaning "roughly half" of the County's main government building, which in turn reduced Plaintiff's work hours "by approximately half."[5] (*Id.* at 16-17, ¶¶ 88-89, 91, 94-97.) In response, Plaintiff submitted a complaint about Defendant Camper's conduct to the County. (*Id.* at 18, ¶ 101.) Five days later, Plaintiff resigned. (*Id.* at 18, ¶¶ 101, 105.)

Plaintiff filed a written charge with the Colorado Civil Rights Division ("CCRD") in October 2023, around one month after her resignation. (*Id.* at 3, ¶ 9.) That charge was then cross-filed with the Equal Employment Opportunity Commission ("EEOC"). (*Id.*) On July 24, 2025, Plaintiff filed the operative complaint naming the Board and individual Defendants Flower and Camper. (*Id.* at 1-3, 39.) Defendants contend that Plaintiff's employment claims under the Colorado Anti-Discrimination Act ("CADA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., must be dismissed for failure to exhaust administrative remedies. (Doc.

---

[5] Plaintiff alleges that individual employees, including Camper, accomplished this by removing keys from Plaintiff's keyring, which prevented her from accessing certain areas. (*Id.* at 17, ¶¶ 93-94.)

No. 30 at 3-4.) Defendants further argue that Plaintiff has failed to plausibly state any of her claims. (*Id.* at 4-21.)

**LEGAL STANDARD**

**I.      Federal Rule of Civil Procedure 12(b)(1)**

Federal Rule of Civil Procedure Rule 12(b)(1) allows a court to dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case but a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the complaint's allegations. *Creek Red Nation, LLC v. Jeffco Midget Football Ass'n., Inc.*, 175 F. Supp. 3d 1290, 1293 (D. Colo. 2016).

Attacks on jurisdiction may be facial or factual. *Gabriel v. United States*, 683 Fed. Appx. 671, 673 (10th Cir. 2017). "In a factual attack, the movant 'goes beyond allegations contained in the complaint [to] challenge the facts upon which subject-matter jurisdiction depends." *Id.* (alteration in original) (quoting *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995)). When addressing a factual attack on jurisdiction, such as one based on failure to exhaust administrative remedies, "a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion" for summary judgment. *Id.* (quoting *Holt*, 46 F.3d at 1002-03). Conversion is appropriate only when "the jurisdictional question is intertwined with the merits of the case." *Id.* (quoting *Holt*, 46 F.3d at 1002-03). Such intertwining exists when "resolution of the jurisdictional question requires resolution of an aspect of the substantive claim." *See id.* at 673-74 (quoting *Pringle v. United States*, 208 F.3d 1220, 1223 (10th Cir. 2000)).

**II.     Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). All that is required is plausibility, not probability. Plausibility, in the context of a Rule 12(b)(6) motion to dismiss, means that the plaintiff pled facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Indeed, a well-pleaded complaint can survive a motion to dismiss even if "recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555 (quoting *Scheuer v. Rhodes*, 416 U.S. 232 (1974)).

Factual assertions are key; when a plaintiff offers no more than conclusory allegations lacking factual support, the Court need not accept them. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citation omitted). Moreover, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1152

(10th Cir. 2007) Ultimately, the Court evaluates "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Id.* at 1160

## ANALYSIS

Plaintiff's claims fall into two broad categories: first, Plaintiff brings discrimination and retaliation claims under CADA and Title VII, as well as related workplace disputes, in Claims One, Two, Three, Five and Eight. Second, Plaintiff alleges First Amendment violations under 42 U.S.C. §§ 1983 and 1985(3) in Claims Four, Six, and Seven. (Doc. No. 26 at 26-39, ¶¶ 149-247.)

Defendants seek dismissal of most of the claims in the first category on the basis that Plaintiff failed to exhaust her administrative remedies. (Doc. No. 30 at 3-4.) Defendants also attack each of Plaintiff's claims under Rule 12(b)(6). (*Id.* at 4-22.)

## I.     Claims One, Two, Three, and Five

As to the workplace discrimination and retaliation claims, Defendants raise two exhaustion arguments. First, and pursuant to CADA, Defendants argue that Plaintiff failed to exhaust her administrative remedies as to Defendants Flower and Camper because Plaintiff's October 2023 CCRD complaint only named the Board as a respondent. (Doc. No. 30 at 3-4.) As a result, neither Defendant Flower nor Camper had proper notice of Plaintiff's intent to hold them individually liable. (*Id.* at 3.) Second, and pursuant to Title VII, Defendants argue that the CCRD complaint (which was cross-filed with the EEOC) only identified alleged discriminatory acts that occurred post-February 2023; therefore, Plaintiff failed to exhaust her administrative remedies as to any alleged discriminatory conduct that occurred prior to February 2023. (*Id.* at 4.)

In addition to their exhaustion arguments, Defendants argue that Plaintiff fails to state a CADA or Title VII claim. (*Id.* at 4-21.) The Court first addresses the exhaustion arguments under CADA and Title VII, then it considers Defendants' Rule 12(b)(6) arguments.

### A.  Administrative Exhaustion of CADA Claims

Defendants argue that Plaintiff's CADA claims, brought against Defendants Flower and Camper, should be dismissed because the CCRD complaint demonstrates that Plaintiff failed to exhaust her administrative remedies as to the individual Defendants. (Doc. No. 30 at 3-4.) Plaintiff responds that analyzing exhaustion is improper at this stage because it requires reviewing documents and resolving factual issues, both of which require going beyond the pleadings. (Doc. No. 46 at 1-2.)

Courts in this district have recognized that exhaustion is a prerequisite to exerting subject matter jurisdiction over CADA claims.[6] *See Barrington v. United Airlines, Inc.*, 566 F. Supp. 3d 1102, 1111 (D. Colo. 2021) (observing that "exhaustion continues to be 'a condition precedent to bringing an action in district court' under CADA" (quoting *City of Colo. Springs v. Conners*, 993 P.2d 1167, 1169 n.3 (Colo. 2000))). An attack on the court's subject matter jurisdiction can be facial or factual, depending on whether the attack relies solely on the complaint itself or on documents outside of the complaint. *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995), *abrogated in part on other grounds by Cent. Green. Co. v. United States*, 531 U.S. 425 (2001). Because Defendants' argument depends on the content of Plaintiff's CCRD complaint, it constitutes a factual attack. *See Frost v. Med. Man Techs., Inc.*, 2025 WL 605259, at *13 (D. Colo. Feb. 25, 2025) ("The failure to exhaust remedies under CADA is more 'properly characterized [as] a factual attack on the Court's subject matter jurisdiction.'").

---

[6] This requirement stems from CADA itself. C.R.S. § 24-34-306(14) (providing "[n]o person may file a civil action . . . without first exhausting the proceedings and remedies available").

"When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations." *Holt*, 46 F.3d at 1003. "A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.* "In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion" unless "the jurisdictional question is intertwined with the merits of the case." *Id.* The touchstone of this latter inquiry "is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim." *Pringle v. United States*, 208 F.3d 1220, 1223 (10th Cir. 2000).

Here, the Court does not need to reach the merits of the claims or defenses to determine whether Plaintiff's failure to name Defendants Flower and Camper in her CCRD complaint is a failure to exhaust her administrative remedies. *See Lasser v. Charter Comm'cns*, 2020 WL 2309506, at *4 (D. Colo. Feb. 10, 2020) ("The jurisdictional issue of whether a plaintiff has exhausted the applicable administrative remedies is not an aspect of the substantive claim of discrimination and would not require resolution of any aspect of the claim."). Thus, the Court may consider evidence outside the pleadings, including the CCRD complaint, without converting the motion to dismiss into one for summary judgment.[7] *See, e.g.*, *Bank v. Allied Jewish Fed'n of Colo.*, 4 F. Supp. 3d 1238, 1242 (D. Colo 2013) (considering CCRD complaint to analyze exhaustion);

---

[7] Although Defendants couch their motion to dismiss as falling entirely under Rule 12(b)(6), Rule 12(b)(1) is the proper rule for seeking dismissal based on jurisdictional defects. *Johnson v. SSA Group LLC*, 2026 WL 100548, at *2 (D. Colo. Jan. 14, 2026) ("The failure to exhaust remedies under CADA is . . . properly characterized [as] a factual attack on the Court's subject matter jurisdiction." (alterations in original) (quoting *Frost v. Med. Man Techs., Inc.*, 2025 WL 605259, at *13 (D. Colo. Feb. 25, 2025))). The Court may consider an incorrectly labeled motion to dismiss under the correct subpart. *See Cirocco v. McMahon*, 294 F. Supp. 3d 1086, 1100 (D. Colo 2018) ("The court must thus determine whether defendant's motion presents a motion to dismiss under Rule 12(b)(6) or Rule 12(b)(1) before it can properly consider any aspect of the parties' merit arguments.").

*Frost v. Med. Man Techs., Inc.*, 2025 WL 605259, at \*13 (D. Colo. Feb. 25, 2025) (taking judicial notice of CCRD complaint to analyze exhaustion).

CADA requires a plaintiff to set forth "the name and address of the respondent alleged to have committed the discriminatory or unfair practice" in the written charge. C.R.S. § 24-34-306(1)(a)(I). The purpose of this requirement is, among other things, to "afford to the party alleged to have committed the unfair practice enough notice and knowledge of the unfair practice with which it is charged." *State ex rel. Colo. C.R. Comm'n v. Adolph Coors Corp.*, 486 P.2d 43, 45 (Colo. App. 1971). Exhaustion in this context is thus tied to giving a defendant proper notice of her liability. *See Clayton v. Dreamstyle Remodeling of Colo., LLC*, 2021 WL 4078911, at \*6 (D. Colo. Sep. 7, 2021) (noting that "[t]o properly exhaust administrative remedies under CADA," plaintiff must "stat[e] the name and address of the respondent" in complaint). Several courts in this district have held that a defendant who is referenced but not identified as a respondent lacks sufficient notice to satisfy CADA's exhaustion requirement. *See id.* (finding failure to exhaust as to defendant referenced "numerous" times in complaint but not identified as respondent); *Bank*, 4 F. Supp. 3d at 1242 (finding plaintiff failed to exhaust administrative remedies as to defendant who was referenced in complaint but not named as respondent); *Lasser*, 2020 WL 2309506, at \*6 (finding plaintiff failed to exhaust administrative remedies as to defendant who was mentioned in exhibit to complaint but not identified as respondent); *cf. Worrell v. Colo. Cmty. Bank*, 2010 WL 2943487, \*3 (D. Colo. July 21, 2010) (finding plaintiff failed to exhaust administrative remedies as to defendant who was identified by title in complaint but not named as respondent); *Wright v. Ball Metalpack Corp.*, 2021 WL 12298860, at \*6-7 (D. Colo. Aug. 24, 2021) (finding plaintiff failed to exhaust administrative remedies as to defendant who was identified by title in the written charge but not named as respondent).

Here, Plaintiff referenced Defendants Flower and Camper in her written charge, but neither was identified as a respondent "who discriminated against" her. (Doc. No. 30, Exh. B at 1-2.) Additionally, Plaintiff did not provide their addresses or other contact information. *See Worrell*, 2010 WL 2943487, at \*3 (noting plaintiff "did not 'list' or otherwise identify [defendant's] name or address, as required by" CADA). Thus, neither Defendant Flower nor Defendant Camper were properly placed on notice that Plaintiff intended to charge them individually. *See Bank*, 4 F. Supp. 3d at 1242 (concluding that references to discriminatory conduct were "insufficient as a matter of law" to put defendant on notice that plaintiff "was intending to charge him individually").

Plaintiff insists federal courts apply the four-factor test stated in *Romero v. Union Pacific Railroad*, 615 F.2d 1303 (10th Cir. 1980) to determine whether naming a defendant as a respondent is necessary for exhaustion purposes. (Doc. No. 46 at 2-3.) Plaintiff further argues that applying *Romero* raises factual issues unsuited to a motion to dismiss. (*Id.*) But this argument is unavailing. First, *Romero* did not involve CADA; it involved Title VII. *See* 615 F.2d at 1304. And second, courts in this district regularly decline to apply *Romero* to CADA claims. *See Lasser*, 2020 WL 2309506, at \*5-6 ("The thirty- and forty-year old cases Plaintiff relies on do not persuade this Court that it should apply *Romero* to his CADA claim."); *Lindsey v. Denver Pub. Schs.*, 2021 WL 5277826, at \*6 (D. Colo. Mar. 22, 2021) ("The Court is not persuaded by Plaintiff's cited cases that the Court must apply the *Romero* test to this CADA claim.") (Hegarty, Mag. J.), *recommendation adopted*, 2021 WL 5277825 (D. Colo. May 27, 2021) (Arguello, J.); *see also Lasser*, 2020 WL 2309506, at \*3 ("[T]he Court is obligated to apply CADA's substantive law exhaustion requirements to Plaintiff's claim.").

In sum, Plaintiff's failure to name Defendants Flower and Camper as respondents in her CCRD complaint dooms her CADA claims against them. Accordingly, these claims should be dismissed without prejudice for failure to exhaust administrative remedies.[8]

### B. Administrative Exhaustion of Title VII Claims

Defendants argue that Plaintiff should be precluded from bringing any Title VII claim based on events occurring prior to February 2023 because her CCRD complaint only references events from February 2023 onward. (Doc. No. 30 at 3-4.) However, Plaintiff does not bring separate Title VII claims based on pre-February 2023 events. (*See* Doc. No. 26 at 4-29, 32-34.) Rather, Plaintiff alleges a steady stream of discriminatory or retaliatory conduct that continued until her resignation in September 2023. (*See id.*) "As many courts have recognized, parties may not use Rule 12(b)(6) to dismiss only parts of a claim." *FTC v. Nudge,* LLC, 430 F. Supp. 3d 1230, 1246 (D. Utah 2019). At this juncture, Defendants cannot effect "piecemeal dismissals of parts of claims" by drawing an artificial line between pre- and post-February 2023 events. *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015).

### C. Failure to State a Title VII Claim

Defendants argue that Plaintiff has failed to state a claim under Title VII for discrimination, hostile work environment, retaliation, or constructive discharge. (Doc. No. 30 at 4-14.) The Court addresses each claim separately.

#### 1. Title VII Discrimination on the Basis of Sex

---

[8] In dismissing CADA claims for failure to exhaust administrative remedies, courts in this district have done so both with and without prejudice. *Compare Clayton v. Dreamstyle Remodeling of Colo., LLC*, 2021 WL 4078911, at \*13 (D. Colo. Sep. 7, 2021) (dismissing CADA claims without prejudice), *with Bank v. Allied Jewish Fed'n of Colo.*, 4 F. Supp. 3d 1238, 1243 (D. Colo. 2013) (dismissing CADA claims with prejudice). However, the Tenth Circuit has held that dismissals based on jurisdictional defects should be without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *see also* Fed. R. Civ. P. 41(b). Accordingly, the Court does so here.

In general, a plaintiff can state a claim of employment discrimination under Title VII in two ways. First, she can provide direct evidence of discrimination. *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1137 (10th Cir. 2024). "Direct evidence is '[e]vidence, which if believed, proves [the] existence of [a] fact in issue without inference or presumption." *Id.* (alterations in original) (quoting *Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1207 (10th Cir. 1999)). Second, and more commonly, she can use circumstantial evidence "[u]nder *McDonnell Douglas*, a three-step analysis [that typically] requires the plaintiff first prove a prima facie case of discrimination." *Id.* (quoting *Khalik*, 671 F.3d at 1194). Under *McDonnell Douglas*, a plaintiff must plausibly allege that: "(1) 'she is a member of a protected class,' (2) 'she suffered an adverse employment action,' and (3) 'the challenged action occurred under circumstances giving rise to an inference of discrimination.'" *Id.* at 1139 (quoting *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015)).

"Of course, at the 12(b)(6) stage, a plaintiff need not conclusively *prove* a violation of Title VII. And the *McDonnell Douglas* burden shifting framework 'does not create a pleading requirement.'" *Id.* (emphasis in original) (quoting *Barrett v. Salt Lake Cnty.*, 754 F.3d 864, 867 (10th Cir. 2014)). Rather, a "plaintiff must 'nudge [her] claims across the line from conceivable to plausible.'" *Id.* (quoting *Khalik*, 671 F.3d at 1190).

Defendants argue that Plaintiff has not sufficiently alleged an adverse employment action, or causation: that is, that she suffered an adverse action *because of* her sex. (Doc. No. 30 at 5-11.) Plaintiff responds that she has alleged sufficient facts to plausibly satisfy the *McDonnell Douglas* framework. (*See* Doc. No. 46 at 6.)

    *a)  Adverse Action*

Adverse employment actions are "those that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Scheer v. Sisters of Charity of Leavenworth Health Sys., Inc.*, 144 F.4th 1212, 1215 (10th Cir. 2025) (cleaned up, internal quotations omitted).

Here, Plaintiff has alleged adverse employment action, including the reduction of her work hours.[9] (Doc. No. 46 at 4-5; *see* Doc. No. 26 at 26, ¶¶ 152-55.) The loss of work hours resulted in her "compensation being cut in half." (Doc. No. 26 at 18.) The halving of an employee's compensation is clearly a "harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 355 (2024). Plaintiff also says the County's inaction following her report of Defendant Flower's conduct was an adverse action. (*Id.* at 26, ¶ 154.) At least one other court in this district has recognized that a refusal to investigate a complaint of discriminatory conduct can constitute an adverse employment action. *See Revan v. Univ. of Denver Dep't of Campus Pub. Safety*, 2026 WL 376809, at *4-5 (D. Colo. Feb. 11, 2026). There, as here, the plaintiff alleged that the failure to take action subjected him to further harassment. *Id.* at *5. And there, as here, the plaintiff alleged that the harassment intensified. *Id.*

### b) Causation

A plaintiff can establish "circumstances giving rise to an inference of discrimination" by alleging "'actions or remarks made by decisionmakers,' 'preferential treatment given to employees outside the protected class,' or 'more generally, upon the timing or sequence of events leading to plaintiff's termination.'" *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012) (quoting

---

[9] She also alleges: "being denied equipment to perform her job adequately," "Flower and Camper encouraging co-worker hostility," and Camper fabricating complaints about Plaintiff's work performance, all of which ultimately resulted in her resignation. (Doc. No. 46 at 6.)

*Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005)). However, conduct that is solely motivated by retaliation, rather than class-based animus, does not support an inference of discrimination. *See Brown v. LaFerry's LP Gas Co., Inc.*, 708 F. App'x 518, 522 (10th Cir. 2017) (noting that "[i]f retaliation was [defendant's] sole motivation," then such "retaliatory conduct does not support [plaintiff's] claim of racially motivated harassment" (citing *Burkhart v. Am. Railcar Indus., Inc.*, 603 F.3d 472, 476 (8th Cir. 2010))).

Defendants argue that, even if Plaintiff has plausibly alleged an adverse employment action, she has failed to allege that any such action was due to her membership in a protected class. (Doc. No. 30 at 8-11.) Instead, Plaintiff has merely pled that Defendants harassed her because of her participation in Defendant Flower's recall and because she filed a complaint. (*Id.*) Plaintiff responds that she has alleged circumstances giving rise to an inference of discrimination, including, "Flower's longstanding animus toward female employees" and his treatment of female employees, including Plaintiff.[10] (Doc. No. 46 at 6; Doc. No. 46 at 5, 7, ¶ 15-16, 24, 37.) After carefully considering the allegations in the Complaint, the Court finds they are just enough to nudge Plaintiff's claim across the line. Although many of Plaintiff's allegations link the problematic conduct to her recall efforts (suggesting retaliation not discrimination),[11] Plaintiff's allegations include various instances of what appear to be gender-motivated comments, actions,

---

[10] Flower's treatment of female employees allegedly included "ignoring them, bullying them, speaking in a condescending, dismissive, or disrespectful tone, questioning their job performance, and interfering with their job duties." (Doc. No. 46 at 6; Doc. No. 46 at 5, 7, ¶ 15-16, 24, 37.)

[11] For example, Plaintiff says Defendant Flower began targeting her with "openly hostile" conduct *after* her significant other called for Defendant Flower's resignation in a public meeting in December 2021. (Doc. No. 26 at 6, 9, ¶¶ 19, 43.) Then, from "the summer of 2022 [to] the summer of 2023," Defendants Flower and Camper "engaged in a campaign of harassment and retaliation" against Plaintiff because of her support for Defendant Flower's recall and her complaints about his behavior. (*Id.* at 10, ¶ 49.)

14

and animus. For example, Defendant Flower allegedly made comments that "women shouldn't be allowed to do certain things" and that "women were 'worthless.'" (*See id.* at 20-21, ¶ 117.) He also "routinely" mistreated female employees by "bullying them," "speaking in a condescending, dismissive, or disrespectful tone" toward them, and even insulting them. (Doc. No. 26 at 5-6, 8, ¶ 17, 37 (alleging Flower called another woman a "little f_cker").) And she alleges that Defendant Flower made female employees "visibly uncomfortable" by "sitting on [their] desks" and "giving [them] backrubs." (Doc. No. 26 at ¶ 38.)

Even neutral conduct can support a finding of discriminatory motive when "viewed in the context of other, overtly [ ] discriminatory conduct." *Brown*, 708 F. App'x at 522. In *E.E.O.C. v. PVNF, L.L.C.*, the Tenth Circuit held that the allegedly "nonsexual" use of the word "bitch," alongside "indisputably gender-related remarks," raised a factual issue regarding whether the former comments "were made because of gender animus." 487 F.3d 790, 799 (10th Cir. 2007). Here, calling Plaintiff a "F_king Bitch" and "Stupid Bitch," and "muttering other comments under his breath," coupled with the generally offensive and allegedly intimidating behavior towards her and other women, is sufficient to show—at least at the pleading stage—that Plaintiff suffered an adverse employment action under circumstances giving rise to an inference of discrimination.

### 2. Title VII Hostile Work Environment

To succeed on a hostile work environment claim, a plaintiff must show (1) she was discriminated against because of her sex, and (2) the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment. *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1251 (10th Cir. 2021) (citing *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1174 (10th Cir. 2020)).

15

"For harassment to be sufficiently severe or pervasive to alter the terms, conditions, or privileges of employment, the complained-of conduct must be both objectively and subjectively offensive." *Young v. Colo. Dep't of Corr.*, 94 F.4th 1242, 1250 (10th Cir. 2024). "Evidence of a general work atmosphere . . . as well as evidence of specific hostility directed toward the plaintiff [ ]—is an important factor in evaluating" a hostile work environment claim. *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1415 (10th Cir. 1987).

Defendants argue that the alleged harassment was not motivated by gender animus or sufficiently severe and pervasive to support a hostile work environment claim under Title VII. (Doc. No. 30 at 11-12.) The Court has already found the allegations sufficient to give rise to an inference of gender-based discrimination, *see supra* Part I.C.1, therefore the only question is whether the conduct, as alleged, is sufficiently severe and pervasive.

"Title VII's prohibition of harassment on the basis of sex forbids only behavior 'so objectively offensive as to alter the "conditions" of the victim's employment.'" *Harsco Corp. v. Renner*, 475 F.3d 1179, 1187 (10th Cir. 2007) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). "[R]un-of-the-mill boorish, juvenile, or annoying behavior . . . is not the stuff of a Title VII hostile work environment claim." *Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012). Moreover, the severity of conduct has both objective and subjective components: courts "must assess 'the objective severity of the harassment from the perspective of a reasonable person in the plaintiff's position, *considering all the circumstances*." *Id.* (quoting *Harsco Corp.*, 475 F.3d at 1187). Courts consider "the frequency of the conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harsco Corp.*, 475 F.3d at 1187 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). In *Sprague v. Thorn Americas, Inc.*,

the Tenth Circuit found that five separate incidents—involving "unpleasant and boorish" comments—over the span of around 16 months did not establish a hostile work environment. 129 F.3d 1355, 1366 (10th Cir. 1997).

Still, even isolated incidents of gender-based harassment may support a hostile work environment claim "when they are 'threatening and severe.'" *Marks v. Sessions*, 2017 WL 4278498, at *6 (D. Colo. Sep. 27, 2017) (quoting *Morris v. City of Colo. Springs*, 666 F.3d 654, 666-67 (10th Cir. 2012)). In *Chavez v. New Mexico*, "a number of gender-based incidents," including unwanted sexual contact and gendered slurs, and "multiple incidents of hostile and physically threatening conduct not necessarily connected to gender," were sufficient. 397 F.3d 826, 833-35 (10th Cir. 2005).

Here, Defendants argue that Plaintiff alleges "at most, two instances of" verbal harassment from Defendant Flower, and she did not find his comments subjectively offensive. (Doc. No. 30 at 11-12.) Plaintiff responds that she alleged "a long history of discrimination and harassment involving no less than four [other] women," and it is "patently obvious" that such conduct "was unwanted." (Doc. No. 46 at 8.) The Court finds Plaintiff's allegations sufficient at this stage.

First, although Plaintiff references only a handful of specific comments from Defendant Flower, the specific language is particularly hostile. (*See id.* at 5-6, 14, ¶¶ 16-17, 76 (calling Hobby "a little fucker," telling Hobby "women shouldn't be allowed to do certain things," and calling Plaintiff a "fucking bitch" and "stupid bitch"). Second, Plaintiff alleges that Defendant Flower stared at her, gave her menacing looks, (*see* Doc. No. 26 at 9, 14, ¶¶ 43, 76), and while that alone may be insufficient to satisfy the high bar of a hostile work environment claim, she also alleges that Defendant Flower engaged in inappropriate behavior toward female employees, including the physically intrusive behavior of sitting on women's desks and giving unsolicited backrubs.

Additionally, Plaintiff alleges that his behavior towards woman was so problematic that several women quit because of it. (*Id.* at 6-8, ¶ 30, 40.) Moreover, the enter Complaint centers on a recall effort that was based on Defendant Flower's ill treatment of women.

Plaintiff has a heavy burden to carry in proving both the objective and subjective prong of this claim, but at this stage, and drawing all reasonable inferences in her favor, she has pled enough to survive the 12(b)(6) challenge.

### 3. Title VII Retaliation

Title VII prohibits an employer from retaliating against an employee because she has "opposed any practice made an unlawful employment practice by" the statute or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under the same. 42 U.S.C. § 2000e-3(a). A plaintiff bringing a Title VII retaliation claim in the Tenth Circuit must plausibly allege: "(1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged [retaliatory] action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021) (first alteration in original) (quoting *Khalik*, 671 F.3d at 1193).

Defendants concede that Plaintiff's signing of Defendant Flower's recall petition; submitting a complaint about Defendant Flower to the Board and, later, to the CCRD; and having the complaint published in the local newspaper "might be sufficient to show Plaintiff 'engaged in protected activity.'" (Doc. No. 30 at 12) *See also Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004) ("Protected opposition can range from filing formal charges to voicing informal complaints to superiors."). However, Defendants argue that Plaintiff failed to plausibly allege that

18

she suffered materially adverse action or that such action was caused by engaging in protected activity. (Doc. No. 30 at 12-13.) The Court disagrees.

The material adversity requirement is judged by an objective standard: "[W]hether a reasonable employee 'would have found the defendant's conduct sufficiently adverse that he or she well might have been dissuaded by such conduct from making or supporting a charge of discrimination.'" *Somoza*, 513 F.3d at 1214 (quoting *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1090 (10th Cir. 2007)). This is a higher bar than the adverse employment action requirement for Title VII discrimination claims. *See Muldrow*, 601 U.S. at 357. Here, Plaintiff alleges that after she filed a complaint of discrimination against Defendant Flower, she was subjected to adverse employment actions including: 1) the loss of access to certain workspaces, which resulted in losing approximately half of her work hours; 2) "the deliberate creation of an intolerably hostile work environment"; and 3) coworker hostility.[12] (Doc. No. 26 at 28-29, ¶¶ 173-74.) The Court concludes that, at the very least, the loss of half of Plaintiff's work hours plausibly constituted a materially adverse employment action. *Cf. Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 70-71 (2006) (finding reassignment to labor that was "more arduous and dirtier" could be materially adverse).

Plaintiff also sufficiently alleges a causal connection between her complaints against Defendant Flower and the materially adverse action. (Doc. No. 46 at 6-7.) A plaintiff can establish a causal connection by presenting "evidence of circumstances that justify an inference of retaliatory motive." *Iweha v. State of Kan.*, 121 F.4th 1236 (10th Cir. 2024) (quoting *Ward v. Jewell*, 772 F.3d 1190, 1203 (10th Cir. 2014)). Generally, the plaintiff "must show that the

---

[12] Plaintiff also alleges she was "denied equipment needed to perform her job," and that Defendant Camper led "a campaign" to fabricate complaints about Plaintiff's work performance. (Doc. No. 26 at 13, 16, ¶¶ 64, 92.)

individual who took adverse action against [her] knew of the employee's protected activity." *Id.* (quoting *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007)). "If the protected conduct is closely followed by the adverse action, courts have often inferred a causal connection." *Ward*, 772 F.3d at 1203.

Here, Plaintiff submitted her complaint to the Board on February 27, 2023. (Doc. No. 26 at 12, ¶ 61.) She filed it with the CCRD on March 3, 2023. (*Id.* at 13, ¶ 66.) She alleges that Defendant Flower began verbally abusing her "[s]hortly after" a state court ordered Defendant Flower's recall to proceed on May 31, 2023. (*Id.* at 14, ¶ 76.) She further alleges that Defendant Camper pressured other employees to bar Plaintiff from cleaning their offices shortly after doing so herself on August 24, 2023. (*Id.* at 16-17, ¶¶ 92-97.) A separation of three to six months is not so attenuated that it precludes causation. *See Hansen v. Skywest Airlines*, 844 F.3d 914, 926 (10th Circuit 2016) (holding that existence of causal link between Fall 2010 report and January 2011 termination was a question for jury).

Because Plaintiff has plausibly alleged that she suffered materially adverse employment action as a result of her engagement in protected activity, the Court concludes that Plaintiff has stated a plausible claim for retaliation under Title VII. [13]

## II.     Claims Four, Six, Seven, and Eight

Defendants contend that Plaintiff has failed to state a plausible claim for First Amendment retaliation, conspiracy to violate civil rights, discriminatory policy under *Monell*, and wrongful termination in violation of public policy. (Doc. No. 30 at 14-21.)

### A.  First Amendment Claim

---

[13] Because the constructive discharge claim is closely tied to the discrimination, hostile work environment, and retaliation claims—each of which will survive the Motion— the constructive discharge claim survives as well.

Plaintiff alleges that Defendants retaliated against her on the basis of constitutionally protected speech, and she alleges that Defendants discriminated against her on the basis of her political beliefs. (Doc. No. 26 at 30-32, ¶¶ 179-97.) Defendants only address the first part of the claim. (Doc. No. 30 at 14-16.)

In the employment context, courts evaluate claims of retaliation in violation of First Amendment rights using the *Garcetti/Pickering* test. *See Butler v. Bd. of Cnty. Comm'rs for San Miguel Cnty.*, 920 F.3d 651, 655 (10th Cir. 2019). The five-part test asks:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Butler*, 920 F.3d at 655 (quoting *Bailey v. Indep. Sch. Dist. No. 69*, 896 F.3d 1176, 1181 (10th Cir. 2018)).

At the outset, Defendants deny that Plaintiff has made any constitutionally protected speech or suffered an adverse employment action. (Doc. No. 30 at 15-16.) However, they dedicate only a single parenthetical to the first issue, which is insufficient for the Court's consideration. *See McKissick v. Yuen*, 618 F.3d 1177, 1189 (10th 2010) (noting effect of failing to develop argument). Further, the Court has already established that Plaintiff suffered at least one adverse employment action in its analysis of her Title VII retaliation claim in Part I.C.3 *supra*.[14] Thus, at issue here is whether Plaintiff adequately pled the first and second parts of the test.[15]

---

[14] The adverse employment action standard under the First Amendment is more relaxed than the materially adverse standard under Title VII. *See Maestas v. Segura*, 416 F.3d 1182, 1188 n.5 (10th Cir. 2005).

[15] Defendants do not address the third element of the test, and the single sentence that Defendants dedicate to the fifth part of the test misapprehends the Complaint. Plaintiff did not

a) *Official Duties*

"An employee does not speak pursuant to her official duties merely because her speech 'owes its existence to' or 'relates to' her employment." *Timmins v. Plotkin*, 157 F.4th 1275, 1280 (10th Cir. 2025) (quoting *Lane*, 573 U.S. at 235). Rather, "an employee's statements are made pursuant to official duties when they stemmed from *and were the type of activities that they were paid to do*." *Id.* (emphasis in original) (quoting *Tufaro v. Okla. ex rel. Bd. of Regents of the Univ. of Okla.*, 107 F.4th 1121, 1139 (10th Cir. 2024)). "The 'mere fact that a citizen's speech concerns information acquired by virtue of [her] public employment does not transform that speech into employee—rather than citizen—speech." *Id.* (alteration in original) (quoting *Lane*, 573 U.S. at 240).

For example, in *Timmins v. Plotkin*, the general counsel of a public entity made statements to the press and to private citizens regarding alleged corruption by members of the entity's board. 157 F.4th at 1280-81. The Tenth Circuit concluded that although "[h]er speech to reporters and private citizens may have related to her job . . . it was not ordinarily within the scope of her duties," which included "filing pleadings, responding to discovery requests, and discussing legal issues and strategy with" the board. *Id.* at 1280.

Defendants assert that Plaintiff's speech—participating in Defendant Flower's recall, sending her complaint to the Board and newspaper, and voicing her opposition to Defendant Flower—was made "in the performance and as part of her official duties." (Doc. No. 30 at 15.) The Court disagrees.

---

allege she was forced out "based on Camper's criticism of her job performance." *Id.* She said she was forced out "because it was no longer financially viable for her to continue working for the County" after the alleged retaliatory cutting of her hours. (Doc. No. 26 at 18, ¶ 102.)

Plaintiff was a custodian. (Doc. No. 26 at 4, ¶ 8.) She was responsible for "maintaining multiple county buildings." (*Id.* at 4, ¶ 9.) She did not have "a duty to reveal the Defendants' malfeasance to the public and to reporters," nor was she otherwise required to communicate concerns about Defendant Flower's conduct to the Board or the public, nor participate in a recall effort. *See Timmins*, 157 F.4th at 1280; *Cano-Rodriguez v. Adams Sch. Dist. No. 14*, 2020 WL 6049531, at *10-11 (D. Colo. Apr. 22, 2020) (finding ESL director was not speaking pursuant to official duties by reporting discrimination against himself and students). Plaintiff's speech was not made pursuant to her official duties.

### b) Matter of Public Concern

An employee's speech "involves matters of public concern" if "it can 'be fairly considered as relating to any matter of political, social, or other concern to the community,' or when it 'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'" *Lane*, 573 U.S. at 241 (quoting *Snyder v. Phelps*, 562 U.S. 443, 453 (2011)). Courts construe "public concern" very narrowly. *Leverington v. City of Colo. Springs*, 643 F.3d 719, 727 (10th Cir. 2011). "[S]tatements revealing official impropriety usually involve matters of public concern." *Butler*, 920 F.3d at 656 (quoting *Trant v. Oklahoma*, 754 F.3d 1158, 1165 (10th Cir. 2014)). However, "[s]peech aimed at 'air[ing] grievances of a purely personal nature' is generally not on a matter of public concern." *Id.* (second alteration in original) (quoting *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1225 (10th Cir. 2000)).

When assessing whether speech involves a matter of public concern, courts "consider 'the content, form, and context of a given statement, as revealed by the whole record.'" *Id.* at 657 (quoting *Bailey*, 896 F.3d at 1181). The context of speech includes "the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and

grievances unrelated to the public's interest." *Singh v. Cordle*, 936 F.3d 1022, 1035 (10th Cir. 2019) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1206 (10th Cir. 2007)).

Here, Plaintiff has plausibly alleged that the content, form, and context of her speech was a matter of public concern. In December 2021, Plaintiff's significant other spoke at a public meeting in support of Plaintiff's coworker Jackie Hobby. (Doc. No. 26 at 6, ¶ 19.) The subject of that meeting was Defendant Flower's conduct toward Hobby and "a series of [other] women" who had previously left the County. (*Id.* at 5-6, ¶¶ 17-19.) Plaintiff's significant other eventually joined recall efforts and Plaintiff herself did the same. (*See id.* at 9, ¶ 43.) These comments were not "made in a context relating to the resolution of her personal dispute with" Defendant Flower. *Callaway v. Hafeman*, 832 F.2d 414, 417 (7th Cir. 1987); *see Patrick v. Miller*, 953 F.2d 1240, 1247 (10th Cir. 1992) (finding comments about discrimination of public concern because plaintiff "was speaking in support of other employees" rather than "addressing . . . practices which affected him directly"). They were matters of public concern. Moreover, the comments and efforts "concerned information in which the public would definitely be interested"—repeated discrimination against another female county employee by an elected official. *Conaway*, 853 F.2d at 796 (finding plaintiff's complaints about officials' misconduct involved matters of public interest).

Plaintiff's submission of her complaint to the CCRD was an extension of that activity. The CCRD is a separate state agency and would not have been involved in the internal grievance process that stemmed from Plaintiff's original complaint. Further, Plaintiff submitted her complaint in support of Hobby approximately eight months prior to filing her own CCRD complaint. (Doc. No. 26 at 3, 10, ¶¶ 9, 49.) Thus, the submission was not "made in a context

24

relating to the resolution of her personal dispute with" Defendant Flower. *Callaway v. Hafeman*, 832 F.2d 414, 417 (7th Cir. 1987); *see Patrick v. Miller*, 953 F.2d 1240, 1247 (10th Cir. 1992) (finding comments about discrimination of public concern because plaintiff "was speaking in support of other employees" rather than "addressing . . . practices which affected him directly"). And the submission "concerned information in which the public would definitely be interested"— repeated discrimination against another female county employee by an elected official. *Conaway*, 853 F.2d at 796 (finding plaintiff's complaints about officials' misconduct involved matters of public interest).

Likewise, Plaintiff's submission of her complaint to the local newspaper involved matters of public concern because of its connection to the recall effort. Plaintiff's complaint was published in July 2023, just two months after a state court ordered the recall election to proceed. (Doc. No. 26 at 14 n.1, 15, ¶ 78.) The dissemination of Plaintiff's complaint to the broader public, coupled with her support of the recall efforts, suggest her efforts were "calculated to disclose misconduct" in anticipation of a public election. *McEvoy*, 882 F.2d at 466-67 & n.1 (noting plaintiff "did not send [complaint about employer's policy] to the local newspaper"); *cf. Callaway*, 832 F.2d at 417 (holding speech not of public concern because plaintiff "wanted her grievance to be resolved internally to avoid a public controversy").[16]

In sum, the Court finds Plaintiff has sufficiently alleged facts in support of her First Amendment claim.[17]

---

[16] Plaintiff's submission of her complaint to the CCRD was in some respects an extension of that activity, rather than an act to transform that activity into a personal grievance. But in any event, Plaintiff submitted her complaint in support of Hobby approximately eight months prior to filing her own CCRD complaint. (Doc. No. 26 at 3, 10, ¶¶ 9, 49.)

[17] Defendants Flower and Camper argue they are entitled to qualified immunity because they "did not violate a clearly established right of which they knew or should have known and should be shielded from the costs of trial or the broad-reaching discovery." (Doc. No. 30 at 17.)

**B. Section 1985 Conspiracy Claim**

The Tenth Circuit has identified the following elements as essential to a claim under 42 U.S.C. § 1985(3): "(1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). Section 1985(3) requires that the conspiracy be motivated by "class-based, invidiously discriminatory animus." *Id.* (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 101-02 (1971)). It only covers conspiracies that are "aimed at interfering with rights that are protected against private, as well as official, encroachment." *Id.* (quoting *Griffin*, 403 U.S. at 833). "For a conspiracy to exist, there must be a meeting of the minds of the conspirators regarding 'the general conspiratorial objective,' but there need not be an express agreement." *Ganzy ex rel. J.G. v. Douglas Cnty. Sch. Dist. RE-1*, 744 F. Supp. 3d 1187, 1193 (D. Colo. 2024) (quoting *Snell v. Tunnell*, 920 F.2d 673, 702 (10th Cir. 1990)). "The existence of a conspiracy often must be established through circumstantial evidence as direct evidence of an express agreement is rare." *Id.* Further, "[a] violation of section 1985 must include class-based or racially discriminatory animus." *Bisbee v. Bey*, 39 F.3d 1096, 1102 (10th Cir. 1994).

Defendants assert that Plaintiff has failed to state a claim under Section 1985 because she has not alleged that Defendants Flower and Camper agreed to act in concert to impede her rights, actually acted in concert, or were motivated by class-based animus. (Doc. No. 30 at 17-18.) The

---

However, it is "clearly established" that public employees should not face retaliatory action for speaking on matters of public concern. *See Montgomery v. Bd. of Cnty. Comm'rs of Douglas Cnty., Colo.*, 637 F. Supp. 2d 934, 943-44 (D. Colo. 2009) ("The Supreme Court has held that public employment cannot be conditioned 'on a basis that infringes the employee's constitutionally protected interest in freedom of expression.'" (quoting *Connick v. Myers,* 461 U.S. 138, 142 (1983))). Because the Court finds Plaintiff's speech to encompass matters of public concern, it rejects Defendants' assertion of qualified immunity.

26

Court agrees. Although Plaintiff alleges that Defendants Flower and Camper "colluded in efforts to deprive" her "of equal protection of the law and to deter [her] from exercising [her] rights,"[18] Plaintiff fails to raise the issue of class-based animus as a motivating factor. (Doc. No. 26 at 34-35, ¶¶ 212-19.) In her response, Plaintiff appears to rely on *Brown v. Reardon*, 770 F.2d 896, 906 (10th Cir. 1985), to rebut the class-based animus requirement. (*See* Doc. No. 46 at 21.) Plaintiff asserts that "[c]ontrary to Defendants' arguments that Plaintiff's claim fails" for lack of class-based animus, "the Courts have recognized that conspiracy claims include conspiracy to violate First Amendment rights." (*Id.*) But *Brown* expressly affirmed that "it is necessary to invoke the animus requirement" under Section 1985(3). 770 F.2d at 906-07 (affirming district court's ruling that plaintiff's Section 1985(3) claim failed for lack of racial or class-based animus). Because Plaintiff fails to do so, she does not plausibly allege a conspiracy to violate her constitutional rights under Section 1985(3).

Accordingly, Plaintiff's claim of a conspiracy to violate civil rights under Section 1985 must be dismissed with prejudice.[19]

### C.  Section 1983 *Monell* Claim—First and Fourteenth Amendments

---

[18] That conclusory assertion, while insufficient on its own, is arguably supported by specific factual allegations. (*See, e.g.*, Doc. No. 26 at 11, ¶¶ 55, 57 (alleging that Defendants Camper furnished Flower with a list of signatories to his recall petition, which enabled him to target Plaintiff)).

[19] "A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(5) and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). The Court finds that amending this claim would be futile. This is the second motion to dismiss filed in this case. (*See* Doc. No. 22.) Plaintiff amended her Complaint 20 days after the first motion was filed. (*See id.*; Doc. No. 24.) Accordingly, Plaintiff was aware of Defendants' challenges to the sufficiency of her pleading when she amended her Complaint. Allowing Plaintiff to amend this claim again would unjustly require Defendants to hit "a moving target." *See Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006).

Generally, "vicarious liability does not apply to a municipal entity, and such an entity cannot be liable simply because it employs someone who commits a constitutional tort." *Frey v. Town of Jackson, Wyo.*, 41 F.4th 1223, 1238 (10th Cir. 2022). "A local government unit can be liable for damages under 42 U.S.C. § 1983 only when its 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Est. of Burnett v. City of Colo. Springs*, 763 F. Supp. 3d 1281, 1286-87 (D. Colo. 2025) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 463 U.S. 658, 694 (1978)).

To adequately state a *Monell* claim against a governmental entity, "a plaintiff must allege (1) a constitutional violation (2) caused by (3) a municipal policy or custom." *Frey*, 41 F.4th at 1238 (citing *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010)).

Defendants focus primarily on whether Plaintiff has alleged facts sufficient to show that the Board "maintains a widespread custom or policy of" retaliating against employees who complain about discrimination. (Doc. No. 30 at 19-20.) In Defendants' view, Plaintiff alleges too few instances of employee complaints going unanswered to establish the existence of a policy or custom. (*Id.*) Defendants also argue that the Complaint fails to link the policy or custom to the alleged constitutional violation. (*Id.* at 18.)

Plaintiff responds that Defendants only focus on one of her theories of liability (that ignoring employee complaints is a widespread, permanent practice). (Doc. No. 46 at 22.) Plaintiff asserts that, in addition to that theory, she has sufficiently alleges the existence of a policy or custom in the form of: (1) decisions of employees with final policymaking authority; (2) decisions of subordinates, which have then been ratified by policymakers; and (3) the failure, through deliberate indifference, to adequately train or supervise employees.[20] (*Id.* at 22.)

---

[20] The Court rejects Plaintiff's argument that Defendants, in not addressing these latter theories, have absolved her of the responsibility to adequately support her claims with sufficient factual

### 1. Constitutional Violation

"The crux of a municipal-liability claim is that a municipal policy or custom caused the plaintiff to suffer a constitutional injury." *Frey*, 41 F.4th at 1239. Thus, generally, "[w]ithout a constitutional violation, Plaintiff has suffered no injury for which a municipality can be liable." *Id.* Here, the Court has already determined that Plaintiff has stated First Amendment claim, which serves as the bases for her *Monell* claim.[21]

### 2. Policy or Custom

An "official policy or custom" can "take one of the following forms: (1) a formal regulation or policy statement"; (2) "a widespread practice that . . . is so permanent and well settled as to constitute custom or usage with the force of law"; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates" whose authority was delegated by the policymakers; and (5) "the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused." *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (quoting *Bryson*, 627 F.3d at 788).

In addition to showing a policy or custom, Plaintiff "must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cnty. Comm'rs of Bryan Cnty, Okla. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original). "That is, a plaintiff must show that the municipal action was taken with the requisite degree of

---

allegations. (Doc. No. 46 at 22.) Defendants adequately alleged the absence of causation or a predicate constitutional violation, which are applicable to all of Plaintiff's theories.

[21] Plaintiff argues that her Title VII hostile work environment claim can serve as a predicate violation for *Monell* purposes. (*See* Doc. No. 46 at 22.) The Court rejects that argument. *See Starrett v. Wadley*, 876 F.2d 808, 813 (10th Cir. 1989) ("[A] right created solely under Title VII cannot serve as the basis for an independent remedy under Section 1983.").

culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.*

### a) Widespread Practice

To establish municipal liability against the Board via widespread practice, Plaintiff must demonstrate an informal custom amounting to a "standard operating procedure" of the Board. *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1054 (10th Cir. 2020) (Bacharach, J., concurring) (quoting *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). Such a custom requires that "the actions of the municipal employees must be 'continuing, persistent and widespread,'" *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008) (quoting *Gates v. Unified Sch. Dist. No. 449*, 996 F.2d 1035, 1041 (10th Cir. 1993)), which plaintiffs most commonly prove by offering "evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way." *Id.* at 1274. Here, Plaintiff must establish a custom of "failure to receive, investigate or act on" complaints of violations of employees' First Amendment rights by showing: 1) the "existence of a continuing, persistent and widespread practice of unconstitutional misconduct by" County employees; 2) "[d]eliberate indifference to or tacit approval of such misconduct" by the Board "after notice to the officials of that particular misconduct"; and 3) that Plaintiff "was injured by virtue of the unconstitutional acts pursuant to the [B]oard's custom and that the custom was the moving force behind the unconstitutional acts." *See Gates*, 996 F.2d at 1041.

The Complaint provides a list of alleged widespread practices attributable to the Board: (1) discrimination by "County representatives"; (2) the Board's "toleration" of, and failure to address, such discrimination; (3) "active[] support" of "County representatives who engage in rights violations"; (4) "[a]ctively making efforts to discredit and force out employees who complain

30

about rights violations"[22]; and (5) "retaliating against employees who complain about rights violations." (Doc. No. 26 at 35-36, ¶ 221.) However, these broad, conclusory allegations do not reference any specific factual allegations in the Complaint. Thus, standing alone, they are insufficient to "plausibly allege 'a direct causal link' between" the violation of Plaintiff's constitutional rights and the Board's practices. *See Waller*, 932 F.3d at 1285 (citation omitted) (quoting *Brown*, 520 U.S. at 404).

Turning to the specific factual allegations elsewhere in the Complaint, the Court finds that Plaintiff fails to plausibly allege the existence of a widespread practice of constitutional violations by County employees. In fact, the only instance of a First Amendment[23] violation alleged in the Complaint appears to be the one at issue here and concerning Plaintiff. (*See* Doc. No. 26.) Further, Plaintiff alleges only two instances of the Board failing to act on a complaint about Defendant Flower's behavior: her complaint and her coworker Hobby's complaint. (*See id.* at 4-24, ¶¶ 7-142.) Other courts in this district have concluded that "two to three incidents . . . is insufficient to establish a 'widespread practice.'" *Est. of Burnett*, 763 F. Supp. 3d at 1288; *see Sexton v. Springs*, 530 F. Supp. 3d 1044, 1070 (D. Colo. 2021) (finding two incidents insufficient to show a widespread practice). Further, it is unclear whether Hobby's situation is comparable to Plaintiff's. According to Plaintiff, Hobby had complained to the Board about "harassment and discrimination" based on her sex. (Doc. No. 26 at 7, ¶ 24.) But there are insufficient details to support a conclusion that the two matters were part of the same widespread practice. And as noted above, two instances is not a widespread practice. And finally, Plaintiff does not allege specific facts to demonstrate the

---

[22] Despite accusing the County of discrediting employees who complain about discrimination, the Complaint fails allege a single instance of the Board doing so. (*See* Doc. No. 26.) Rather, such conduct is exclusively attributed to Flower, Camper, and other employees. (*See id.*)

[23] As to the Fourteenth Amendment, Plaintiff brings no such claim.

31

Board was deliberately indifferent toward the conduct of Defendants Flower or Camper, or that such indifference was the "moving force" behind her injuries.

The Court concludes that Plaintiff fails to allege a widespread practice for purposes of *Monell*.

### b) Decisions of Policymakers

The decision of an employee with "final policymaking authority in a certain area . . . constitutes municipal policy for" Section 1983 purposes." *Randle v. City of Aurora*, 69 F.3d 441, 447 (10th Cir. 1995). "A single act of an employee may be imposed on a local government entity if the employee possesses final authority to establish policy with respect to the challenged action." *Marshall v. Dix*, 640 F. Supp. 3d 1033, 1068 (D. Colo. 2022) (quoting *Ireland v. Jefferson Cnty. Sheriff's Dep't*, 193 F. Supp. 2d 1201, 1226 (D. Colo. 2002)); *see also Dempsey v. City of Baldwin*, 143 F. App'x 976, 987-90 (10th Cir. 2005) (analyzing whether city council or mayor had final authority over personnel issues after plaintiff alleged municipal liability for unconstitutional termination by mayor).

"The question of who is a 'policymaker' is a question of state law." *Dempsey*, 143 F. App'x at 986 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). "In looking to state law, a court must determine which official has final, unreviewable discretion to make a decision or take an action." *Id.* The Tenth Circuit considers three factors relevant to this analysis: "(1) whether the official is meaningfully constrained 'by policies not of that official's own making;' (2) whether the official's decisions are final—i.e., are they subject to any meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority." *Randle*, 69 F.3d at 448 (quoting *Praprotnik*, 485 U.S. at 127).

Plaintiff alleges that the Board, Defendant Flower, and Defendant Camper were "officials with final policymaking authority" by virtue of their status as elected officials. (Doc. No. 26 at 24, ¶ 139.) However, the Complaint fails to specifically allege that any Defendant had final policymaking authority over the specific actions that caused her constitutional injuries. *See Smith v. USD 480 Liberal*, 682 F. Supp. 3d 980, 992 (D. Kan. 2023) (dismissing *Monell* claim where plaintiff "failed to plausibly allege that [defendant] had final policymaking authority over the challenged actions"). Indeed, it seems unlikely that Defendant Camper, as the clerk and recorder, had any authority over Plaintiff's terms of employment. Likewise, Plaintiff does not allege that Defendant Flower had authority over Plaintiff's terms of employment; to the contrary, Plaintiff says she "requested that Flower not be her 'point of contact,'" a request that was granted over his objections. (Doc. No. 26 at 9, ¶¶ 46-47.) These allegations suggest that Defendant Flower lacked authority over Plaintiff's terms of employment, and that his attempts to gain such authority were "meaningfully constrained 'by policies not of [his] own making.'" *Randle*, 69 F.3d at 448.

Nor does Plaintiff "identify the 'decisions that were in direct violation of [her] constitutional rights.'" *Marshall*, 640 F. Supp. 3d at 1068. Instead, she makes sweeping allegations of "internal politics and machinations" and a "culture of fear and silencing complaints." (Doc. No 26 at 23-24, ¶¶ 133-39.) But "these conclusory statements fail to identify a specific decision made by any particular [County employee] with final policymaking authority." *Marshall*, 640 F. Supp. 3d at 1069. Similarly, Plaintiff fails to allege that the actions resulting in her constitutional injuries were "actually . . . final *policy* decision[s]." *Id.* Rather, the injuries Plaintiff alleges—the taking of her work keys, hostility from coworkers, and verbal abuse from Defendant Flower—all appear to

result from unofficial actions.[24] *See id.* (noting final policymakers possess "final authority to establish *municipal policy* with respect to the action ordered").

### c)   *Ratification of Subordinates*

Plaintiff's claim that final policymakers ratified the decisions of subordinate employees also fails. Plaintiff offers only conclusory assertions in support of this theory. She does not specify who the subordinate decisionmakers were, what the decisions were, or whether the subordinates had been delegated any relevant authority. (*See id.* at 24, 36, ¶¶ 140, 226.) The Court presumes that Plaintiff's ratification claims refer to the Board's inaction in the face of complaints against Defendant Flower. (*See id.* at 24, ¶ 140 (noting Board "ratified the conduct of other County employees by explicitly encouraging and supporting them")). But "[r]atification is more than acquiescence, and a mere failure to discipline does not amount to ratification." *Erickson v. City of Lakewood, Colo.*, 489 F. Supp. 3d 1192, 1207 (D. Colo. 2020) (quoting *Jack v. Cnty. of Stanislaus*, 2017 WL 4123930, at *7 (E.D. Cal. Sep. 15, 2017)). Plaintiff "must allege that the subordinate's actions—and the bases for them—were ratified by final policymakers." *Id.* Plaintiff fails to do so.

### d)   *Failure to Train*

"[T]he inadequacy of [government] training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [government officials] come into contact." *Marshall*, 640 F. Supp. 3d at 1067 n.24 (second and third alterations in original) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "However, '[a] municipality's culpability for a deprivation of rights is at its most tenuous where a

---

[24] The one exception may be the denial of cleaning supplies by Commissioner Kevin Day. (Doc. No. 26 at 13, ¶ 64.) However, nowhere does Plaintiff allege that Day possessed any relevant policymaking authority that might give way to municipal liability. (*See id.*)

claim turns on a failure to train.'" *Erickson*, 489 F. Supp. 3d at 1207 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

Plaintiff describes an atmosphere of fear among employees who experience discrimination, which she ascribes to a failure to train "HR Director(s) and employees regarding civil rights." (Doc. No. 26 at 25, ¶ 145.) But the allegations are conclusory and she does not allege enough details to demonstrate how her injuries could have been avoided with more training. *See Erickson*, 489 F. Supp. 3d at 1208 (dismissing claim where defendant failed to set forth facts regarding "how the individual defendants were trained, who they were trained by, or why their training was deficient"). Nor does she allege a pattern of similar constitutional violations by untrained employees, which "is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62. The Complaint thus fails to establish the existence of a municipal policy or custom based on a failure to train.

In sum, Plaintiff's Complaint fails to set forth adequate facts to support her assertion of a custom or policy of retaliation or discrimination attributable to the Board. For that reason, her *Monell* claims is dismissed with prejudice.[25]

### D.  Wrongful Termination Claim

"The at-will nature of . . . employment is a matter of public policy;" however, Colorado has "created exceptions to the employer's general right to terminate an employee at-will." *Crawford Rehabilitation Servs., Inc. v. Weissman*, 938 P.2d 540, 546 (Colo. 1997). One such exception is the tort of wrongful termination in violation of public policy. *See Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 104 (Colo. 1992).

---

[25] This claim is dismissed with prejudice for the same reasons explained in n. 19 *supra*.

"[A] plaintiff may state a claim for retaliatory discharge in violation of public policy by alleging that he or she was employed by the defendant; that the defendant discharged him or her, and that the defendant discharged him or her in retaliation for exercising a job-related right or performing a specific statutory duty, or that the termination would undermine a clearly expressed public policy." *Kearl v. Portage Env't, Inc.*, 205 P.3d 496, 499 (Colo. App. 2008). Further, a plaintiff "must also allege that the public policy invoked 'truly impacts the public in order to justify interference into an employer's business decisions.' " *Id.* (quoting *Crawford Rehabilitation Servs., Inc.*, 938 P.2d at 552).

Defendants argues that Plaintiff "does not allege which clear mandate of public policy" the Board violated. (Doc. No. 30 at 20.) Plaintiff responds that she was forced to resign in violation of Colorado public policy "protect[ing] employees from retaliation for engaging in political activity, opposing unlawful conduct, and reporting workplace discrimination and hostile work environment." (Doc. No. 26 at 38, ¶ 240.) In support, Plaintiff cites *Kearl v. Portage Environmental, Inc.*, 205 P.3d 496 (Colo. App. 2008). In that case, the Colorado Court of Appeals recognized that "Colorado has a clearly expressed public policy against terminating an employee in retaliation for the employee's good faith attempt to prevent the employer's participation in *defrauding the government*." *Id.* at 500 (emphasis added). Plaintiff fails to explain how reporting workplace discrimination falls within the category of "defrauding the government." Plaintiff's failure to allege an applicable public policy warrants dismissal of her claim. *See Corbin v. Sinclair Mktg., Inc.*, 684 P.2d 265 (Colo. App. 1984) (affirming dismissal of claim for failure to identify specific policy); *see also Lampe v. Presbyterian Med. Ctr.*, 590 P.2d 513, 515-16 (Colo. App. 1978) (affirming dismissal of claim citing nonspecific and overly broad policy statement).

The Court thus dismisses Plaintiff's claim for wrongful termination in violation of public policy with prejudice.[26]

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that Defendants' Motion to Dismiss Second Amended Complaint [ECF 26], Doc. No. 30, be **GRANTED in part and DENIED in part as follows:**

1) That Plaintiff's claims against Defendants Flower and Camper under CADA are **DISMISSED without prejudice**;

2) That Plaintiff's Section 1985 claims against Defendants Flower and Camper for conspiracy to violate civil rights are **DISMISSED with prejudice**;

3) That Plaintiff's Section 1983 *Monell* claim against the Board are **DISMISSED with prejudice**;

4) That Plaintiff's claim of wrongful termination in violation of Colorado public policy are **DISMISSED with prejudice**;

5) And that all of Plaintiff's remaining claims are permitted to proceed.

Dated this 31st day of March, 2026.

BY THE COURT:

_____
Maritza Dominguez Braswell
United States Magistrate Judge

---

[26] The Court dismisses this claim with prejudice for the same reasons explained in n.19 *supra*.